IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BEVERLY LASOURD,<br>  Plaintiff | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. B-04-067 |
| | § | |
| TARGET STORES,<br>  Defendant | §<br>§<br>§ | |

## DECLARATION OF TRACY CASTILLO

I, Tracy Castillo, declare and state under penalty of perjury:

1.  I am more than eighteen (18) years of age and am competent in all respects to make this Declaration. The facts stated herein are within my personal knowledge and are true and correct.

2.  I am an Executive Leader-Asset Protection employed by Target stores. I provide loss prevention services. I was employed as the Asset Protection Team Leader at Target's Harlingen, Texas, store from March 2001 to August 2003. In that position, my loss prevention work included investigating possible employee misconduct that could lead to financial loss for the store.

3.  In late March and early April of 2003, I, with the assistance of other Asset Protection staff at Target's Harlingen store, discovered six instances occurring over the course of approximately 18 days in which store employee Beverly Lasourd, without authorization, marked down the price of merchandise for customers to an amount well below the stated price for the item.

4.  Cashiers are expected to sell merchandise items to customers for the stated price and generally do not have the authority to mark down the price of items for customers. The only exception to this rule is when a customer challenges a price or has an unticketed item. The employee then has permission to take the customer's word for the price if both (i) the price is not more than $20 and (ii) the price asserted by the customer is "reasonable." If a cashier is uncertain as to whether these criteria are satisfied, they are instructed and trained to contact a supervisor and seek guidance.

5.  During its investigation in late March and early April of 2003, as the store's Asset Protection Team Leader, I found markdowns by Ms. Lasourd that were plainly unreasonable given the scanned price of the item. For example, on one occasion, Ms. Lasourd marked down a $18.86 book for a customer to only $2.50. On another occasion, Ms. Lasourd marked down a watch for a customer that had a scanned price of $9.08 and sold it to the customer for only $1.00.

6.  I was concerned about these extraordinary markdowns by Ms. Lasourd not only because the markdowns were plainly unreasonable given the scanned price of the items, but also because

**APPENDIX 1**

Ms. Lasourd often used inappropriate, and seemingly deceptive, methods of marking down the merchandise. If a merchandise item is presented for purchase without a bar code or price ticket, it is Target's policy for the cashier to key in "999999" in the price. Instead of following this standard process, our investigation revealed that Ms. Lasourd often rang up items using a code for Christmas decorations (code 511) when the items involved were clearly not Christmas decorations. Because these sales were coded by Ms. Lasourd as Christmas decorations, very substantial price reductions would be less likely to draw the attention of members of management reviewing reports. This was the case because during that time of year (March and April), Christmas decorations were often sold at very large discounts.

7.    The investigation I conducted revealed that Ms. Lasourd used this wrong alternate code on, at least, 27 different occasions in a one-month period. Ms. Lasourd's practice of using this alternate code not only meant that Ms. Lasourd was ringing up the merchandise inappropriately, but also that she was causing significant errors in inventory and sales tracking at the store.

8.    Target's written policy at the time put employees on notice that they could "lose [their] job" if they engaged in unauthorized markdowns or incorrectly rang up sales. Ms. Lasourd's conduct would have ultimately led to her discharge.

9.    On April 3, after several weeks of investigating Ms. Lasourd's markdown practices, I met with Ms. Lasourd, along with another Asset Protection Specialist, Robert Curry, and a member of the store's management, Titi Sanusi, on April 3, 2003, to interview her concerning these discounts. Ms. Lasourd was not terminated at that meeting but was told to return for another meeting with store management later that same week. My understanding is she never returned.

10.    None of our decisions, statements, or other actions were based on Ms. Lasourd's age. I legitimately believed, and still believe, Ms. Lasourd engaged in improper markdowns and coding of sales. Our decisions, statements, and actions were all based on legitimate business considerations such as our concern with preventing loss for the store.

11.    Other than communications with members of Target's management, Asset Protection staff, and legal counsel, I have not communicated with anyone concerning the investigation of improper markdowns by Beverly Lasourd or anything related to her separation from employment with Target. My conversations with members of Target's management, Asset Protection staff, or legal counsel concerning those topics have all been made only for purposes of loss prevention, personnel administration or defense of this case. I only communicated with individuals with a business need to know. I have never said to anyone, in any fashion, that Beverly Lasourd had stolen from Target or that she was a thief.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____          _2/9/05_____
Tracy Castillo                                                  Date

APPENDIX 2