Westlaw.

72 Fed.Appx. 112
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

Page 1

H

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)

United States Court of Appeals,
Fifth Circuit.
Diana L. READ, Plaintiff-Appellant,
v.
BT ALEX BROWN INC., etc.; et al, Defendants,
BT Alex Brown Inc., doing business as Deutsche
Banc Alex Brown, Defendant-
Appellee.
No. 02-10191.

July 30, 2003.

Female employee sued employer alleging that employer discriminated against her, and ultimately terminated her employment, based on her age and sex. The United States District Court for the Northern District of Texas, 2002 WL 22060, granted employer's motion for summary judgment, and employee appealed. The Court of Appeals, Garwood, Circuit Judge, held that: (1) differential terms and conditions of employment were not imposed because of employee's age or sex; (2) comments made by employer were not probative of discriminatory animus; and (3) employer's proffered reasons for terminating employee were not pretextual.

Affirmed.

West Headnotes

[1] Civil Rights $\Longleftrightarrow$1168
78k1168 Most Cited Cases

[1] Civil Rights $\Longleftrightarrow$1203
78k1203 Most Cited Cases
Differential terms and conditions of employment to which employee was subjected by employer were not imposed because of employee's age or sex, for purposes of employee's claims against employer brought pursuant to Title VII and ADEA; although other employees received training opportunities that employee did not, employee was hired as an experienced employee and those who received the training lacked employee's level of experience, although employee was denied friends of the company referrals, only one employee in the office received such referrals, and although employee alleged that employer yelled at her on one occasion, employee failed to produce any evidence that the conduct was motivated by discriminatory animus. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights $\Longleftrightarrow$1551
78k1551 Most Cited Cases
Comment made by employer concerning the need for the company to hire a young man out of college was not direct evidence of discrimination in employee's termination; the comment required an inference that the employer wanted to hire a young man out of college because of his sex, and not simply because employer believed that a recent college graduate would tend to work harder.

[3] Civil Rights $\Longleftrightarrow$1551
78k1551 Most Cited Cases
Comment made by employer that brokers tend to slow as they age was not probative of discriminatory animus in employee's termination, where the comment was made almost three years prior to employee's termination.

[4] Civil Rights $\Longleftrightarrow$1137
78k1137 Most Cited Cases
Employer's proffered reasons of employee's performance and cost reduction for terminating employee were not pretextual; employee was failing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 9**

to reach break-even point in commissions, and those employees with low production numbers that the employer did retain were not similarly situated.

*113 Appeal from the United States District Court for the Northern District of Texas. (3:99-CV-1697-D).

Before GARWOOD, SMITH and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge. [FN*]

> FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**1 Plaintiff-appellant Diana L. Read appeals the district court's grant of summary judgment in favor of her former employer, defendant-appellee BT Alex Brown, Inc. (Brown), on her claims of age and sex discrimination brought under Title VII, [FN1] the Age Discrimination in Employment Act (ADEA), [FN2] and the Texas Labor Code. [FN3] Because Read has not produced evidence sufficient to create a genuine issue of material fact, we conclude that summary judgment was appropriate and affirm.

> FN1. 42 U.S.C. § 2000e *et seq.*
>
> FN2. 29 U.S.C. § 623(a)(1).
>
> FN3. Tex. Labor Code Ann. § 21.001 *et seq.*

### Facts and Proceedings Below

Brown, a financial management company, acting through Michael Crossley, the then manager of its Dallas office, hired Read, a female born in 1946, as an investment broker in the Private Client Division of Brown's Dallas office in April 1994. Prior to working for Brown, Read had been successfully employed as a broker with Merrill Lynch, where her performance, as measured by her "production"-an indicator comprising the gross sales commissions earned by a broker and the total customer assets under a broker's management-placed her in the top ten percent of all brokers working at Merrill Lynch.

In fact, in her last year at Merrill Lynch, Read produced in excess of half a million dollars in gross sales commissions. The record thus reflects, and the parties do not dispute, that Read presented herself, and was hired by Brown, as an experienced broker, with the expectation that she would perform at Brown in a manner consistent with her prior performance at Merrill Lynch.

Shortly after Crossley hired Read, Jeff Rupp, who had participated in recruiting and hiring Read, replaced Crossley as the head of Brown's Dallas office. According to Read, her difficulties with her employer, discussed in more detail below, date from this point. The first sign of discord appeared in January 1995 when, shortly after assuming responsibility for the Dallas office, Rupp attended a breakfast meeting with Read at which he told her that "when brokers get old, they slow down," and that although he considered Read to be "one of the old ones," he hoped that she would not begin to slow.

*114 Her initial difficulties with Rupp notwithstanding, Read continued to work in Brown's Dallas office until her termination at the end of 1998. For a variety of reasons, however, Read's production at Brown never approached the levels that she had achieved while employed as a broker with Merrill Lynch. [FN4] Indeed, Read's production at Brown was not only lower than the average level of production for Brown's brokers, [FN5] but at no point even approached Brown's "break-even point." [FN6]

> FN4. Read posted her highest production numbers while working at Brown in 1997 when she produced $383,624 in sales commissions with approximately $28 million in assets under her management.
>
> FN5. The average production of Brown brokers when Read started in 1994 was $500,000. At the time of her termination in December 1998, the average had increased to over $700,000.
>
> FN6. The break-even point represents the amount of gross sales commissions that a broker needs to earn before Brown will begin to make a profit on that broker's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 112                                                                                              Page 3
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

efforts. During the period of Read's employment, the break-even point increased from $350,000 to $467,000.

In the fall of 1998, Brown's then parent company, Bankers Trust, faced serious difficulties as a result of crises in the Russian and Latin American financial markets. In response, Bankers Trust directed all its subsidiaries, including Alex Brown, to retrench. To that end, Brown's Dallas office was initially instructed to submit a plan to reduce expenses by $384,000. [FN7] The reductions were to come from four areas: (1) communication and data services, (2) travel and entertainment expenses, (3) staff, and (4) new hires. Accordingly, Rupp submitted to Brown's Baltimore office a series of proposed expense reductions for the Dallas office, one of which was a proposal to terminate Read's employment. Thereafter, on December 1, 1998, Rupp discharged Read. Read, the only female broker in the Dallas office over the age of forty, was also the only broker in the Dallas office terminated in connection with the cost-savings program.

    FN7. This target was later lowered to $274,000.

**2 On May 25, 1999, Read filed a charge of age and sex discrimination against Brown with the Equal Employment Opportunity Commission and, after obtaining a right to sue letter, commenced the present lawsuit.

Discussion
A. *Standard of Review*

We review a district court's grant of summary judgment *de novo, Bauer v. Albemarle Corp.,* 169 F.3d 962, 966 (5th Cir.1999), and in light of the now familiar framework announced in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and more recently, *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

B. *Age and Sex Discrimination*

Title VII and the ADEA prohibit an employer from discriminating against any individual, in hiring or discharge, or in the terms and conditions of employment, on the basis of sex or age. [FN8] 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). Where a plaintiff alleges discriminatory *115 hiring or discharge, or points to a tangible employment decision motivated by discriminatory animus, "the employment decision itself constitutes a change in the terms and conditions of employment that is actionable." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998). Where the plaintiff, however, cannot point to a specific tangible employment action, the conduct complained of, to constitute actionable discrimination, must be severe or pervasive. *See id.* Under either theory of discrimination, and under either Title VII or the ADEA, [FN9] it is the plaintiff who bears the ultimate burden of proving, by a preponderance of the evidence, that her employer intentionally discriminated against her because of her protected status. *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003); *Wallace v. Methodist Hosp. System,* 271 F.3d 212, 219 (5th Cir.2001).

    FN8. Read's discrimination claim under Texas law need not be analyzed separately. Such claims are analyzed under our Title VII precedent. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 n. 10 (5th Cir.2001); *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 680 n. 1 (5th Cir.2001) (noting that "Texas courts also apply [the *McDonnell Douglas*] analysis to age discrimination cases.").

    FN9. "The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both statutes." *Bauer v. Albemarle Corp.,* 169 F.3d 962, 966 (5th Cir.1999).

"A plaintiff can prove intentional discrimination through either direct or circumstantial evidence." *Wallace,* 271 F.3d at 219. Where a plaintiff, however, can only muster circumstantial evidence that discriminatory animus played a role in an employment decision, the plaintiff may rely on the *McDonnell Douglas-Burdine,* burden-shifting framework to create a presumption of intentional discrimination. *Id.* To create such a presumption, the plaintiff must first establish a prima facie case of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 11**

72 Fed.Appx. 112
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

Page 4

discrimination. [FN10] Thereafter, the burden of production shifts to the defendant to produce evidence that the plaintiff was dismissed for a legitimate nondiscriminatory reason. *Reeves*, 120 S.Ct. at 2106. "If the defendant succeeds in carrying its burden of production, the presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture, and the trier of fact proceeds to decide the ultimate question of whether the plaintiff has proved that the defendant intentionally discriminated against her." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999). The plaintiff, thereupon, must produce substantial evidence that the defendant's nondiscriminatory reason is merely a pretext for impermissible discrimination. *Wallace*, 271 F.3d at 220. Where the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir.2003); *Sandstad*, 309 F.3d at 894; *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.1996).

> FN10. The elements of a prima facie case of discrimination are: "(1) the plaintiff was discharged; (2)[she] was qualified for the position at issue; (3)[she] was within the protected class; and (4)[she] was replaced by someone younger or outside the protected group." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir.2002).

**\*3** We now turn our attention, in light of this analytical framework, to Read's claims of age and sex discrimination.

C. *Read's Discrimination Claims*

Read's complaint charges Brown with impermissibly discriminating against her on the basis of age and sex both in the terms and conditions of her employment, and in the termination of her employment.

1. Terms and Conditions of Employment

First, Read argues that she produced sufficient evidence to create a genuine issue \*116 of material fact regarding her claim that Brown discriminated against her in the terms and conditions of her employment.

[1] As an initial matter, we note that it is far from clear that the conduct of which Read complains was sufficiently severe or pervasive as to constitute actionable discrimination in the terms and conditions of her employment. *See Burlington Indus., Inc.*, 118 S.Ct. at 2265. We also note that many of the alleged acts of discrimination of which Read complains may well be barred by the applicable statute of limitations. [FN11] Even assuming, *arguendo*, however, that Brown's treatment of Read does amount to actionable discrimination under Title VII and the ADEA, and that such conduct is not barred by limitations, we conclude that Read's claim must nevertheless fail as she cannot point to a genuine factual dispute concerning the central question of discriminatory animus. *See Reeves*, 120 S.Ct. at 2105 (noting that to impose liability under the ADEA, "the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative effect on the outcome.' ") (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). In other words, we cannot conclude that Read has raised a genuine factual dispute concerning whether the differential terms and conditions of employment to which she was subjected were imposed because of her age or sex.

> FN11. For cases arising in Texas, under both Tit. VII and the ADEA, the plaintiff must file a complaint with the EEOC within 300 days of the last act of alleged discrimination. 29 U.S.C. § 626(d)(2) (ADEA); 42 U.S.C. § 2000e-5(e), (e)(1) (Tit.VII). Read filed her complaint with the EEOC on May 25, 1999. Under *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2071, 153 L.Ed.2d 106 (2002), where the plaintiff in a discrimination suit complains of a discrete act of discrimination, that act is barred unless the plaintiff files a charge with the EEOC within 300 days after the act occurred. Where, on the other hand, a plaintiff brings a claim of discrimination

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 12**

Case 1:04-cv-00067    Document 13-6    Filed in TXSD on 02/10/2005    Page 5 of 10

Page 6 of 11

72 Fed.Appx. 112                                                                                                           Page 5
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

based on a hostile work environment, a court may consider "component acts of the hostile work environment [that] fall outside the statutory time period" so long as "an act contributing to the claim occurs within the filing period." *Id.* at 2074. Thus, any discrete acts of discrimination alleged by Read are barred if they occurred before July 29, 1998. Any acts that are components of Read's hostile work environment claim, however, are actionable provided that *an act* contributing to that claim occurred after July 29, 1998.

Read's complaint is devoid of any reference to specific dates. And the only discriminatory act that Read identifies in her response to Brown's motion for summary judgment is her actual termination on December 1, 1998, a discrete act that constitutes a charge of discrimination separate from Read's claim that she suffered discrimination in the terms and conditions of her employment. Read's deposition testimony, however, does contain general and undated references to what Read perceived to be rude behavior exhibited toward her by Rupp. To conclude that Read's claim of discrimination in the terms and conditions of her employment is not time barred, therefore, requires us to accept the dubious assumption, based only on the vague references in Read's deposition testimony, that Rupp's allegedly rude behavior continued after July 29, 1998. We indulge Read with this generous supposition and assume arguendo, as did the district court, that Read's claim is not proscribed.

Read cites five incidents that she maintains establish that she was discriminated against in the terms and conditions of her employment with Brown. First, she alleges that she received less sales assistant support than her male or younger colleagues. Second, Read alleges that she received fewer training opportunities than male or younger brokers. Specifically, Read argues that younger brokers were sent to training workshops and were given opportunities to learn about the investment-banking business while she was not.

*117 Third, Read maintains that she was not offered certain "friends of the company" referrals, [FN12] while younger brokers were. Fourth, she contends that Rupp did not assist her with prospective clients but did provide such assistance to younger brokers and to male brokers. And finally, Read argues that she was subjected to rude and condescending behavior because of her age and sex.

> FN12. The record reflects that "friends of the company" referrals occur where a Brown broker is recommended to manage newly-issued stock offered to the officers, directors, and employees of one of Brown's corporate clients.

Although this litany of Brown's alleged discriminatory behavior initially appears damning, it is evident upon closer examination that Read has failed to produce evidence sufficient for any reasonable jury to conclude that the above allegedly discriminatory terms and conditions, taken singly or together, were imposed because of Read's age or sex.

**4 Read's claim that a lack of sales assistant support suffices to prove age or sex discrimination is entirely without merit. Read shared a sales assistant with a male broker, and cannot claim, therefore, that she was treated any differently from similarly situated colleagues. Indeed, by her own admission Read was not entitled, under Brown's operating procedures, to her own sales assistant. Only a broker who produced in excess of $700,000 in commissions merited his or her own assistant. Moreover, after repeated complaints, Rupp actually assigned his own sales assistant to Read in 1997.

Read's evidence concerning training opportunities is equally unavailing. Read has adduced evidence that younger brokers received training opportunities where she did not. This fact, standing alone, however, cannot reasonably support an inference of discrimination. As noted above, Read was hired as an experienced broker. According to Read's deposition testimony, the brokers who received additional training were not experienced brokers, but were new to Brown. Absent additional evidence of discriminatory animus, it is not reasonable to infer that the newer brokers received training because they were young and male, and not because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00067   Document 13-6   Filed in TXSD on 02/10/2005   Page 6 of 10

Page 7 of 11

72 Fed.Appx. 112                                                                                              Page 6
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

they lacked Read's level of experience. Moreover, Read introduced no evidence that she ever requested additional training opportunities which she was denied. And although there is also no evidence that the younger male brokers requested additional training opportunities, Read has produced no evidence that those brokers *did not* request such opportunities.

Similarly, Read's complaint that she was denied friends of the company referrals cannot support a claim of age or sex discrimination. Unlike the training opportunities that she did not request but nevertheless maintains she was discriminatorily denied, Read does allege that she requested these referrals. She admitted, however, that she was inexperienced in the handling of such accounts. Moreover, she points to no evidence that tends to show that she was denied them because of her age or sex. On the contrary, Read can only point to one other broker in the Dallas office who did receive these types of referrals. No reasonable jury could infer from the fact that Read was denied these referrals, together with all but one of the young and male brokers in the Dallas office, that Read was the victim of impermissible age or sex discrimination in the terms or conditions of her employment.

Read's complaint that Rupp refused to assist her with developing her client base also fails to establish impermissible sex or age discrimination. Read points to the *118 testimony of two younger, male brokers, who stated that Rupp was always willing to assist them, when they *requested* such assistance, or was willing to accompany them to meetings with investors, also when they so requested. In contrast to this testimony, Read cites three incidents where she asked Rupp to assist her with an investor but he subsequently failed to do so. Read, however, also admits that Rupp did meet with several of her clients, and that after 1996, she stopped asking Rupp for his assistance. At most, this evidence shows that Rupp was less than cooperative on three occasions in four years; it is not, however, probative of discriminatory intent.

**5 Finally, Read alleges that Rupp treated her in a rude and condescending manner because of her age and sex. The only specific example of rude behavior that Read could recall in her deposition testimony, however, was an occasion where Rupp yelled at her when she could not locate a particular reference book. We remind Read that "Title VII is not a general civility code for the American workplace." *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 263 (5th Cir.1999). Rather, for offensive conduct to rise to the level of actionable discrimination, it must be sufficiently severe or pervasive so as to alter the actual terms or conditions of employment. *Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405, 409 (5th Cir.2002).

However, even making the dubious assumption that Rupp's rude treatment met this high standard, we conclude that Read has failed to produce any evidence from which a reasonable jury could infer that the conduct to which she was subjected was motivated by discriminatory animus. Read admitted that Rupp also yelled at a male broker, a fact that belies her claim that Rupp's rudeness was motivated by antagonism based on her age or sex. Read did not testify, or otherwise adduce evidence, that Rupp was not similarly rude to others in the office, or that his rudeness was focused on those in a protected class. The remainder of Read's summary judgment evidence consists of the general averment that Rupp adopted a rude and condescending attitude toward her, and refused to return her phone calls. Such conclusory allegations are insufficient to defeat a properly supported motion for summary judgment. *Whelan v. Winchester Production Co.,* 319 F.3d 225, 230 (5th Cir.2003).

It is therefore clear that none of Read's evidence, taken individually or as a whole, concerning the five examples of discriminatory terms and conditions of employment, is sufficient to establish that Brown treated Read differently because of her age or sex. Accordingly, we conclude that the district court correctly awarded summary judgment to Brown on Read's first claim of age and sex discrimination.

2. Discriminatory Discharge

Read next contends that the district court erred in granting summary judgment to Brown on her claim of discriminatory discharge. First, Read maintains that the district court erred in finding that she offered no direct evidence that Brown's decision to discharge her was discriminatory. According to Read, the district court erroneously failed to treat three comments made by Rupp over the course of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 112
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

Page 7

Read's four years with Brown as direct evidence of discrimination which allowed her to prevail apart from the *McDonald-Douglas-Burdine* burden shifting framework. We disagree.

Two of those comments are patently not direct evidence of discrimination. The first consists of a statement Rupp made in connection with the hiring of a new sales assistant. According to Read, in 1995 Rupp declared, "I think we need to change *119 the psychology around here. These girls back here are not working very hard and what I'd like to do is for us to hire a young man just out of college who will ... show these girls back here how to work." The second comment, made after Read had been discharged, was delivered in the context of Rupp's attempt to account for Read's discharge to a prospective employer. Rupp explained: "We [Brown] have very high standards here; we're like Goldman Sachs.... We don't hire someone like her; she doesn't fit the image...."

**6 [2] For this purpose, direct evidence is defined in this circuit as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir.2002). In other words, to qualify as direct evidence of discrimination, an employer's comment "must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996). [FN13] Neither of these two comments, the 1995 sales-assistant comment or the Goldman Sachs comment, however, fits this definition as neither supports a claim of discrimination without the need for the drawing of an inference or the making a presumption. The first comment requires the jury to infer that Rupp wanted to hire a young man out of college because of his sex, and not simply because Rupp believed that a recent college graduate would tend to work harder. Even if such an inference were reasonable, it is nonetheless a necessary one if the statement is to be accepted as evidence of discriminatory intent. The sales-assistant comment, therefore, cannot qualify as direct (or meaningfully probative) evidence.

FN13. In connection with her claim that the Goldman Sachs comment is direct evidence of discriminatory animus, Read also invites us to abandon this circuit's definition of direct evidence in favor of a definition announced by Judge Tjoflat of the Eleventh Circuit in *Wright v. Southland Corp.*, 187 F.3d 1287, 1288 (11th Cir.1999). We decline this invitation for two reasons. First, this panel is without the authority to overrule the decision of another panel of this circuit. *See United States v. Taylor*, 933 F.2d 307, 313 (5th Cir.1991). Second, that portion of Judge Tjoflat's decision in *Wright* announcing Read's proposed definition of direct evidence is dictum and was not joined by the other two judges on the *Wright* panel. *See Wright*, 187 F.3d at 1306 (Judges Cox and Hull concurring in the judgment and result, respectively).

In any event, the result here would clearly be the same even absent the direct/circumstantial evidence distinction (or our court's definition of those terms for this purpose), for the three comments in question, taken together, are simply insufficiently probative of discriminatory intent in respect to Read's December 1998 termination, particularly in light of Brown's undisputed evidence of its nondiscriminatory reason for Read's termination. Nothing in our affirmance here is inconsistent with the result in *Wright*.

The Goldman Sachs comment also does not constitute direct evidence of discrimination. Indeed, as Read admits, to conclude that this comment evinces discriminatory intent requires the jury to assume that Goldman Sachs tends not to hire women, a fact for which Read offers no evidence aside from her own unsupported, conclusory assertion that Goldman Sachs is known for not hiring women. Accordingly, the district court did not err in refusing to treat either of these comments as direct (or otherwise meaningfully probative) evidence of discrimination in Read's termination.

Finally, Read points to a third comment, namely Rupp's 1995 comment to Read that brokers tend to slow as they age. This remark, unlike the other two,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 15**

72 Fed.Appx. 112                                                                                                              Page 8
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

may arguably fall within the definition of direct *120 evidence of discrimination. However, given this comment's vintage, as well as Read's failure to identify any other like comments in the course of her four-year tenure with Brown, we cannot view this statement as anything more than a stray remark. It, considered in isolation or together with the other remarks, is simply not meaningfully probative of discriminatory animus in Read's termination.

[3] Mere stray remarks, however distasteful, do not demonstrate discriminatory animus. *E.E.O.C. v. Texas Instruments Inc.,* 100 F.3d 1173, 1181 (5th Cir.1996). Rather, "for comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.' " *Krystek v. Univ. of S. Miss.,* 164 F.3d 251, 256 (5th Cir.1999) (quoting *Brown v. CSC Logic Inc.,* 82 F.3d 651, 655 (5th Cir.1996)); *see also Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 405 (5th Cir.2001) (noting that "this court already has interpreted Reeves not to overrule our stray remarks jurisprudence, at least where the plaintiff has failed to produce substantial evidence of pretext."). Rupp's comment, although not related to sex, was related to age. Rupp was also an individual with authority over Read's continued employment. The comment, however, was made at the beginning of Read's tenure with Brown, and almost three years prior to her termination. As the district court concluded, therefore, this comment cannot be viewed as proximate in time to the challenged employment decision, and cannot therefore be considered as meaningfully probative evidence that Read's termination was discriminatory.

**7 Having concluded that Read failed to produce adequate direct evidence of discrimination, the district court correctly analyzed Read's claim under the *McDonnell Douglas-Burdine,* burden-shifting framework sketched above. *See infra* Part II(B). Read's final arguments on appeal, therefore, challenge the district court's application of that framework to her claim.

It is undisputed that Read established the elements of a prima facie case of age and sex discrimination.

It is also clear that Brown satisfied its burden of production, relying on affidavits and depositions to produce a legitimate, nondiscriminatory reason for Brown's discharge. Whether the district court's grant of summary judgment was in error, therefore, turns on whether Read introduced the requisite substantial evidence, direct or circumstantial, that such justification was pretextual. We conclude that she did not, and that summary judgement therefore was appropriate.

Brown maintains that Read was selected for termination, based on her performance as a broker, in connection with a wider effort to reduce costs. In an effort to show that this proffered reason was merely a pretext for impermissible discrimination, Read argues that Brown both offered inconsistent explanations for her termination, and retained male and younger brokers with production levels lower than hers.

An inconsistent reason offered to explain an employee's termination may support a finding that the reason is mere pretext. *See Reeves,* 120 S.Ct. at 2108 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."); *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1167 (6th Cir.1996) ("An employer's changing rationale for making *121 an adverse employment decision can be evidence of pretext."). The record, however, does not reveal any inconsistency in Brown's explanations for discharging Read.

[4] Read argues that both Rupp and Tim Schweizer, Rupp's supervisor in Brown's Baltimore office, initially told her that the reason for her termination was her failure to reach the $467,000 break-even point for 1998, while Brown's position in the present litigation is that Read was selected for discharge based on her overall performance. In support of this argument, Read cites the following portion of her deposition testimony:
"A: We sat down. The very first thing [Rupp] said, he said, we're doing some cost cutting and you and I are going to have to part company.
Q: Okay.
A: And I said, Well if you're doing cost cutting, why would you fire me if I'm bringing in 400,000? And [Rupp] said, the cutoff is 467 and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX 16

72 Fed.Appx. 112
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

Page 9

you're not doing 467."
This testimony, however, does not establish that Brown terminated Read for failing to reach $467,000 in production, nor does it therefore establish that Brown dissembled or changed its reason for discharging Read from a failure to reach a particular production number to a general failure to perform. On the contrary, it serves to support Brown's position that it did not base its decision to discharge Read solely on production numbers, and that it instead raised the issue of the $467,000 production figure only in response to Read's implicit protestation that she should not be discharged because she was producing a profit for the firm.

**8 That Read was not discharged only for failing to reach the $467,000 break-even point also undermines her reliance on evidence that Brown retained other brokers who had not posted gross commissions in excess of $467,000. Brown did retain five brokers with production numbers below $467,000. *See Ramirez v. Landry's Seafood Inn & Oyster Bar,* 280 F.3d 576, 577 (5th Cir.2002) (noting that a presumption of discrimination is raised where an employer treats similarly situated employees differently under circumstances that are essentially identical). Read, however, has not refuted Brown's evidence that these five employees were not similarly situated. Brown produced evidence that one of the brokers retained was a part of a profitable team of brokers that specialized in serving clients in Mexico. Another was an older broker who was in the process of transferring his clients to other brokers in anticipation of retirement. The remaining three were all inexperienced brokers who had worked for Brown as brokers for less than a year. Indeed, Read failed to produce any evidence showing that any of these remaining five brokers was similarly situated. We cannot, therefore, conclude that the district court erred in finding that Read was unable to establish that Brown's proffered reason for selecting her for termination was pretextual.

Finally, Read advances the alternative argument that if Brown did not discharge her because of a production threshold, then the decision to discharge her must have been subjective, and that summary judgment was not, therefore, appropriate. *See Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 681 (5th Cir.2001) (noting that "it is inappropriate to decide as a matter of law that an employee is unqualified because he has failed to meet entirely subjective hiring criteria."). *Medina v. Ramsey Steel Co.,* however, is inapposite here. The reasons cited by Brown for Read's discharge are not primarily subjective. Read never achieved at Brown that same level of production that she had attained at *122 Merrill Lynch. Indeed, she never met Brown's break-even point, let alone the nationwide average production level of brokers at Brown.

Upon reviewing Brown's motion for summary judgment *de novo,* we conclude that the district court correctly awarded summary judgment to Brown both on Read's claim of discrimination in the terms and conditions of her employment and on her claim of discriminatory discharge. Read has not made the requisite showing that Brown's explanation for her termination was false, *see Reeves,* 120 S.Ct. at 2107, and has failed to produce sufficient evidence from which a reasonable jury could conclude that Brown intentionally discriminated against her on the basis of either her age, her sex, or a combination of those two traits.

D. *Motion to Alter or Amend the Judgment*

In her final point of error, Read argues that the district court erred in denying her Rule 59 motion to alter or amend the judgment. We generally review a decision on a motion to alter or amend judgment under Rule 59(e) for an abuse of discretion. *Fletcher v. Apfel,* 210 F.3d 510, 512 (5th Cir.2000). To the extent that a ruling on a Rule 59 motion is a reconsideration of a question of law, however, the standard of review is *de novo. Tyler v. Union Oil Co.,* 304 F.3d 379, 405 (5th Cir.2002).

**9 Read's Rule 59 motion did not seek to "correct manifest errors of law or fact or to present newly discovered evidence," *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989), but instead simply challenged the district court's application of the standard for granting summary judgment. [FN14] Since, in our *de novo* review of the summary judgment evidence, we find no error in the district court's grant of summary judgment to Brown, we likewise find no error in the district court's denial of Read's Rule 59 motion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX 17

72 Fed.Appx. 112  
72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))  
(Cite as: 72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.)))

Page 10

FN14. The district court denied Read's Rule 59 motion on the grounds that she attempted to rely on new evidence not made a part of the original summary judgment record, without having demonstrated sufficient reason for her failure to introduce that evidence originally. Read, however, points out that the evidence appended to her Rule 59 motion was not new evidence, but consisted only of testimony that had been redacted from the depositions that she had earlier introduced in support of her memorandum in opposition to summary judgment. According to Read, she appended this formerly redacted material in order to place in its appropriate context the summary judgment evidence that the district court had already reviewed. Read does not appeal the district court's refusal to consider this additional material as part of the summary judgment record. Rather, her only argument on appeal is that the district court misapplied the standard for granting summary judgment.

Conclusion

Because we conclude that Read cannot point to any evidence in the record sufficient to raise a genuine issue of material fact concerning any discriminatory motive for her termination, we conclude that the district court properly awarded summary judgment to Brown. The district court's judgment is, accordingly, AFFIRMED.

72 Fed.Appx. 112, 2003 WL 21754966 (5th Cir.(Tex.))

**Briefs and Other Related Documents (Back to top)**

. 2002 WL 32330658 (Appellate Brief) Reply Brief of Appellant (Jul. 10, 2002)Original Image of this Document (PDF)

. 2002 WL 32330710 (Appellate Brief) Brief of Appellee (Jun. 24, 2002)Original Image of this Document (PDF)

. 2002 WL 32330657 (Appellate Brief) Brief of Appellant (May. 08, 2002)Original Image of this

Document (PDF)

. 02-10191 (Docket)            (Feb. 18, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 18**