Westlaw.

Not Reported in F.Supp.                                                                                        Page 1
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

H

United States District Court, N.D. Illinois, Eastern Division.
Jo Ann STOPKA, Plaintiff,
v.
ALLIANCE OF AMERICAN INSURERS,
Rodger S. Lawson, C. Clarke Imbler and Gregory W. Heidrich, Defendants.
No. 95 C 7487.

Dec. 9, 1996.

Former vice president of administration sued former employer and former supervisors under Equal Pay Act, Title VII, Americans with Disabilities Act (ADA), Age Discrimination in Employment Act (ADEA), Family and Medical Leave Act (FMLA), and state tort law. Former employer counterclaimed for conversion and breach of fiduciary duty. After Title VII and ADEA claims were dismissed as against two former supervisors, plaintiff's motion for summary judgment on counterclaims was denied, 1996 WL 494269. On former employer's motion for summary judgment as to plaintiff's claims, the District Court, Conlon, J., held that: (1) plaintiff failed to prove that five male vice presidents with whom she compared herself performed equal or similar work, thus defeating her Equal Pay Act claim; (2) plaintiff failed to support failure to promote claim under ADEA or Title VII; (3) fact question precluded summary judgment on Title VII wage discrimination claim; (4) evidence that younger division head was paid more than plaintiff was insufficient for ADEA wage discrimination claim; (5) fact questions precluded summary judgment on reasonable accommodation claim under ADA; (6) plaintiff could not maintain FMLA claim after having used up her 12 weeks of available FMLA leave; and (7) evidence did not allow claim for intentional infliction of emotional distress under Illinois law.

Motion granted in part and denied in part.

*MEMORANDUM OPINION AND ORDER*

West Headnotes

[1] Labor and Employment 2463
231Hk2463 Most Cited Cases
(Formerly 232Ak1333 Labor Relations)
Beyond superficial descriptions, former vice president of administration failed to prove that five male vice presidents with whom she compared herself performed equal or similar work, thus defeating her Equal Pay Act claim based on alleged higher salaries of male vice presidents, where duties of vice president of administration related to internal administration, such as employee benefits and finance, while responsibilities of male vice presidents related to legal services, specifics of employer's insurance business, and external communications with media. Fair Labor Standards Act of 1938, § 6(d)(1), 29 U.S.C.A. § 206(d)(1).

[2] Labor and Employment 2461
231Hk2461 Most Cited Cases
(Formerly 232Ak1333 Labor Relations)
To prevail on Equal Pay Act claim, employee must show that: (1) higher wages were paid to male employee, (2) for equal work requiring substantially similar skill, effort, and responsibilities, and (3) work was performed under similar working conditions. Fair Labor Standards Act of 1938, § 6(d)(1), 29 U.S.C.A. § 206(d)(1).

[3] Labor and Employment 2463
231Hk2463 Most Cited Cases
(Formerly 232Ak1333 Labor Relations)
To prove that male employee performed equal work, as required for Equal Pay Act claim, plaintiff must show that her job and male employee's job involved common core of tasks or that significant portion of the two jobs is identical, and she must make this showing using actual job performance and content, not job titles, classifications, or descriptions. Fair Labor Standards Act of 1938, § 6(d)(1), 29 U.S.C.A. § 206(d)(1).

[4] Judgment 569
228k569 Most Cited Cases
Granting of summary judgment with respect to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 19**

Not Reported in F.Supp.
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 2

Equal Pay Act claim does not necessarily preclude Title VII claim alleging sex-based wage discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fair Labor Standards Act of 1938, § 6(d)(1), 29 U.S.C.A. § 206(d)(1).

[5] Civil Rights ⚖ 1505(3)
78k1505(3) Most Cited Cases
(Formerly 78k342)
Former employee's failure to promote claims under Title VII and ADEA were not time barred, where she filed charges within month of denial of promotion. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[6] Civil Rights ⚖ 1505(7)
78k1505(7) Most Cited Cases
(Formerly 78k342)
Former employee's claim that former employer discriminated with respect to her salary throughout her employment invoked continuing violation doctrine, and thus her salary discrimination claim was not time barred, despite employer's contention that employee thought as early as three years before filing that her pay discrepancy with other employees was due to age and sex. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[7] Civil Rights ⚖ 1505(7)
78k1505(7) Most Cited Cases
(Formerly 78k342)
Where there is continuing unlawful practice, each day practice continues is new illegal act for statute of limitations purposes. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[8] Civil Rights ⚖ 1168
78k1168 Most Cited Cases
(Formerly 78k158.1)

[8] Civil Rights ⚖ 1203
78k1203 Most Cited Cases
(Formerly 78k168.1)
Former vice president of administration failed to show that she was qualified for position she sought, and thus she could not establish prima facie case required for ADEA and Title VII claims alleging that employer failed to promote her because of her age and gender; position she sought entailed management of insurance research, lobbying, and information services, former vice president had little or no experience in any of those areas, and employer showed that its managers were involved in substantive work of division they would oversee, requiring experience. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[9] Civil Rights ⚖ 1171
78k1171 Most Cited Cases
(Formerly 78k158.1)

[9] Civil Rights ⚖ 1209
78k1209 Most Cited Cases
(Formerly 78k168.1)
Even if female former employee could make out prima facie case of failure to promote based on age or sex, employer provided nonpretextual reasons for promoting different male employee, despite female employee's bare allegation that she had better credentials than male employee, where employer explained that male employee had different skills than female employee, and that new job would have given female employee substantial additional responsibilities, which was contrary to instructions employer received from her doctor. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[10] Civil Rights ⚖ 1135
78k1135 Most Cited Cases
(Formerly 78k148)
Self-serving statements about one's abilities cannot rebut legitimate nonpretextual explanation given by employer, for purposes of failure to promote claim. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[11] Civil Rights ⚖ 1549
78k1549 Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 20**

Not Reported in F.Supp. Page 3
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

(Formerly 78k387)

[11] Civil Rights 1551
78k1551 Most Cited Cases
(Formerly 78k388)
Having failed to show that male vice presidents with whom she compared herself were similarly situated, female former vice president of administration was required to use direct method of proof, using either direct or circumstantial evidence, to establish wage discrimination under Title VII and ADEA. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[12] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
Evidence that female former vice president of administration was only woman division head, was paid less than every other division head, and was paid below minimum required by employer's salary schedule, and evidence that more women than men in upper management were paid below minimum required by schedule, raised fact question precluding summary judgment on her Title VII wage discrimination claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[13] Civil Rights 1203
78k1203 Most Cited Cases
(Formerly 78k168.1)
Without more, evidence that younger division head was paid more than former vice president of administration was not sufficient to survive summary judgment on latter's ADEA wage discrimination claim, in light of their different jobs and different backgrounds. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

[14] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
Question of fact as to whether employer should have engaged in dialogue with employee to determine her needs, before denying her promotion and removing certain of her job responsibilities in purported effort to accommodate her disabilities when she returned from disabilities leave, precluded summary judgment on employee's reasonable accommodation claim under ADA. Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A).

[15] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
Given employee's work load and her requests for assistance, question of fact as to whether employer should have known how many hours she was working, and whether employer's response to employee's requests for assistance and reduction of her work load was inadequate or not made in good faith, precluded summary judgment on employee's claim that employer failed to provide reasonable accommodation under ADA after she returned from disability leave. Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A).

[16] Labor and Employment 371
231Hk371 Most Cited Cases
(Formerly 78k1231, 78k173.1)

[16] Labor and Employment 379
231Hk379 Most Cited Cases
(Formerly 78k1501, 78k209)
Former employee, who had used up her 12 weeks of available leave under Family and Medical Leave Act (FMLA), could not support FMLA claim based on her contention that, if employer caused or contributed to her disability, she would not have used her entire FMLA leave; employee did not support her FMLA contention with any case law, and, to extent that she claimed employer caused her disability, she could have sought redress under state tort law. Family and Medical Leave Act of 1993, §§ 102, 104, 29 U.S.C.A. §§ 2612, 2614.

[17] Damages 192
115k192 Most Cited Cases
Terminated employee failed to provide evidence to support reasonable finding that former employer's conduct was so outrageous or so extreme as to be beyond all possible bounds of human decency, thus defeating employee's claim for
intentional infliction of emotional distress under Illinois law.
CONLON, District Judge.

*1 Jo Ann Stopka ("Stopka") sues Alliance of American Insurers ("Alliance") and three of her former supervisors, Rodger S. Lawson ("Lawson"),

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 4

C. Clarke Imbler ("Imbler") and Gregory W. Heidrich ("Heidrich") (collectively "defendants"). Stopka alleges violations of the Equal Pay Act (Count I), Title VII (Count II), the Americans with Disabilities Act ("ADA") (Count III), the Age Discrimination in Employment Act ("ADEA") (Count IV), the Family and Medical Leave Act ("FMLA") (Count V), and state tort law (Count VI). Alliance counterclaims for conversion and breach of fiduciary duty. The court dismissed Stopka's claims against Imbler and Lawson as to Counts II and IV on June 17, 1996. The court denied Stopka's motion for summary judgment on Alliance's counterclaims on August 23, 1996. Alliance now moves for summary judgment as to Stopka's claims pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

The following facts are undisputed except where otherwise noted. Alliance is a national trade association of property and casualty insurers. Defendants' 12(M) Statement of Facts ("Def. 12(M)") ¶ 2. Alliance employed Stopka between August 1984 and June 17, 1996 at its Schaumburg office. Id. ¶ 1. Alliance initially hired Stopka as an office manager in 1984 at a salary of $29,000. Id. ¶ 9. During the next seven years, Alliance promoted Stopka five times and more than doubled her starting salary. Id. ¶ 13. Stopka's primary responsibility was to head the human resources department where she developed and administered Alliance's personnel policies and ensured Alliance's compliance with state and federal employment laws, including the FMLA, ADA, ADEA, Title VII, and the Equal Pay Act. Id. ¶¶ 13, 35. During her tenure with Alliance, Stopka never had responsibility for substantive insurance matters. Id. ¶ 36.

In 1991, Alliance underwent a major staff reorganization in which approximately forty percent of its employees were laid off. Id. ¶ 14. As a result of the reorganization, Alliance created five divisions reporting to senior vice president Imbler. Id. ¶ 16. Stopka was promoted to vice president and put in charge of one of the five divisions as of December 19, 1991. Id. As a result of the promotion, Stopka received additional responsibilities, which included oversight of Alliance's finance department. Id. ¶¶ 17, 24. Stopka received three additional employees to supervise, though the total number of employees who reported to Stopka was reduced. Id. ¶ 24. Many managers were also assigned new or different department functions during the reorganization. Id. ¶ 17.

Stopka requested additional staff each budgeting period following 1991 to assist her with her workload. Id. ¶ 27. However, Alliance had to perform essentially the same amount of work with its post-reorganization staff. Id. ¶ 28. Alliance eventually obtained additional assistance for Stopka in 1994. Id. ¶ 30. The parties dispute the extent and effectiveness of this assistance. Id.

*2 In mid-1992, Stopka came to the conclusion that her pay discrepancies with other employees were due to her age and sex. Id. ¶ 32. Stopka noted that she was the only female division head and that she was paid less than male division heads. Pl. 12(N)(3)(b) ¶ 244a. Moreover, she noted that female employees were paid less than the minimum required by Alliance's salary administration system more frequently than male employees. Def. 12(N)(3)(a) ¶ 88; Stopka Aff. ¶ 6. Stopka filed a charge of discrimination against Alliance in 1995. Def. 12(M) ¶ 32.

Stopka was on disability leave for depression from September 1994 until January 13, 1995. Id. ¶ 121. The parties dispute the extent to which Alliance was aware of Stopka's mental and physical condition before her leave. Id. ¶ 122. When she returned to work, Stopka's doctor told Alliance that she should not work more than eight hours per day. Id. ¶ 125. Stopka claims she worked more than eight hours a day after her return to work. Pl. 12(N)(3)(a) ¶ 127. The parties dispute whether management knew how many hours Stopka was actually working. Def. 12(M) ¶ 127. The parties also dispute the effectiveness of Alliance's attempt to accommodate Stopka's needs. Id.

In November 1994, Alliance advised Stopka that Alliance could not guarantee her reemployment to the same position if she was unable to return to work at the expiration of her FMLA leave. Id. ¶ 156. Stopka began another FMLA leave on July 19, 1995 due to a recurrence of Crohn's disease. Id. ¶ 157. On July 28, 1995, Alliance informed Stopka that her leave beginning July 19, 1995 counted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 22**

Not Reported in F.Supp.
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 5

against her FMLA entitlement. *Id.* ¶ 158. On August 25, 1995, Alliance informed Stopka that her FMLA leave had expired as of August 24, 1995, and because of Alliance's needs and Stopka's admitted uncertainty as to the time of her return, Alliance would begin looking for a replacement for her. *Id.* ¶ 159. The parties dispute what method of calculation Alliance typically used for determining the length of an employee's disability leave. *Id.* ¶¶ 148, 152.

On October 9, 1995, Alliance reorganized its administrative operations, created a new position of Director of Human Resources, and distributed certain of Stopka's responsibilities to other Alliance employees. *Id.* ¶ 161. On November 8, 1995, Stopka again provided a physician's certificate stating she was unable to perform any kind of work. *Id.* ¶ 162. She also informed Alliance that she would remain on disability until January 1996. *Id.* In November 1995, Alliance hired a new Director of Human Resources. *Id.* 163. Stopka was not able to return to work until May 6, 1996. *Id.* ¶ 165.

In May 1996, Alliance discovered Stopka had lied on her job application in 1984. *Id.* ¶ 10. Stopka's resume stated that she attended New Mexico State University and that she had received a degree in business administration from the University of Texas at El Paso. *Id.* In fact, Stopka had not attended either school and never attended college at all. *Id.* ¶ 11. Alliance also discovered Stopka redeemed points earned in Alliance's long distance telephone accounts for her personal use. Pl. 12(N)(3)(b) ¶ 294. On June 17, 1996, Alliance terminated Stopka's employment. *Id.* ¶ 167.

*DISCUSSION*
I. SUMMARY JUDGMENT STANDARDS

*3 A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Fisher v. Transco Services-Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Stewart v. McGinnis,* 5 F.3d 1031, 1033 (7th Cir. 1993), *cert. denied,* 510 U.S. 1121 (1994). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir. 1993) (citations omitted).

II. EQUAL PAY ACT CLAIM

[1][2] In Count I, Stopka claims that Alliance violated the Equal Pay Act because she received a lower salary than Alliance's five other male division vice presidents: Gregory Heidrich, Richard Hefferan, Steven Millikan, Dean Moffitt, and Larry Kibbee. The Equal Pay Act prohibits an employer from paying a woman lower wages "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions ...." 29 U.S.C. § 206(d)(1). To prevail on her Equal Pay Act claim, Stopka must show that: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort, and responsibilities, and (3) the work was performed under similar working conditions. *Soto v. Adams Elevator Equipment Co.,* 941 F.2d 543, 548 (7th Cir. 1991) (citation omitted).

[3] Defendants argue that Stopka has failed to satisfy the second element. In order to prove that a male employee performed equal work, Stopka must show that her job and the male employee's job involved a "'common core' of tasks" or that "a significant portion of the two jobs is identical." *Fallon v. State of Illinois,* 882 F.2d 1206, 1209 (7th Cir. 1989) (citations omitted). Stopka must make this showing using "actual job performance and content--not job titles, classifications or descriptions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 23**

Not Reported in F.Supp.
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 6

...." *E.E.O.C. v. Mercy Hosp. & Medical Center,* 709 F.2d 1195, 1197 (7th Cir. 1983) (quoting *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir. 1979), aff'd, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)).

*4 Stopka has failed to make this showing with respect to the five vice presidents with whom she compares herself. Stopka was Vice President of Administration, and her duties related to internal administration, which included benefits, ERISA matters, finance, graphic production, mail services, and management of administrative division employees. Def. 12(M) ¶ 35. Stopka never performed the responsibilities of the operational insurance divisions: substantive insurance matters, research or public policy development, legislative or regulatory representation, legal matters, tax matters, financial regulation, loss control, public relations, compliance services, personal lines insurance issues, commercial lines insurance issues, or workers' compensation issues. *Id.* ¶ 36.

The five vice presidents' responsibilities were substantially different from Stopka's. Hefferan provided legal advice to Alliance and was responsible for management of Alliance's legal and regulatory affairs. *Id.* ¶ 40. Heidrich prepared research reports and analyses on substantive insurance issues and reported information about pending laws and regulations to Alliance members. *Id.* ¶ 43. Millikan had nearly a decade of substantive insurance experience in the private and public sectors before joining Alliance in 1980; he oversaw implementation of Alliance's policies on all workers' compensation and commercial lines matters through 1994. *Id.* ¶¶ 47, 48. Moffitt was responsible for all legislative and regulatory issues concerning personal lines of insurance coverage nationwide. *Id.* ¶ 51. Kibbee was responsible for all of Alliance's external communications with media and for administering Alliance's Department of Public Affairs. *Id.* ¶ 56. His position required journalism and communications experience. *Id.* As this discussion demonstrates, just because each person shared the title of vice president does not mean they had equal or similar work. Stopka has failed to show similarities in work beyond superficial descriptions. Accordingly, defendants' motion for summary judgment is granted as to Count I. *Mercy Hosp.,* 709 F.2d at 1197; *Gibson v. American Library Association,* 846 F. Supp. 1330, 1336 (N.D. Ill. 1993).

III. TITLE VII AND ADEA CLAIMS [FN1]

FN1. The granting of summary judgment with respect to an Equal Pay Act claim does not necessarily preclude a Title VII claim. *Gibson,* 846 F. Supp. at 1336 (citing *Washington County v. Gunther,* 452 U.S. 161 (1981)).

[4] In her complaint, Stopka alleges a number of ways in which Alliance violated Title VII and the ADEA. However, since Stopka only addresses the issues of wage discrimination and Alliance's failure to promote her in her motion for summary judgment, the court limits its discussion to those claims. Because Title VII and the ADEA involve similar standards, the claims under those statutes will be considered simultaneously.

A. STATUTE OF LIMITATIONS

[5][6][7] Before examining the merits of Stopka's Title VII and ADEA claims, it is necessary to address defendants' argument that Stopka's Title VII and ADEA claims are time barred. The allegation regarding Alliance's failure to promote Stopka is not time barred because Stopka filed charges within a month of the denial of a promotion. With respect to the salary claim, defendants point out that Stopka thought as early as 1992 that her pay discrepancy with other employees was due to age and sex. Defendants argue that since Stopka did not file charges until 1995, she did not file her claims within 300 days and her claims are thus time barred. *Lorance v. AT & T Technologies, Inc.,* 827 F.2d 163, 165 (7th Cir. 1987), aff'd, 490 U.S. 900 (1989); 42 U.S.C. § 2000e-5(e). However, where there is a continuing unlawful practice, each day the practice continues is a new illegal act for purposes of the statute of limitations. *Webb v. Indiana National Bank,* 931 F.2d 434, 438 (7th Cir. 1991) (citations omitted); *Bazemore v. Friday,* 478 U.S. 385, 395-96 (1986). Stopka claims Alliance discriminated with respect to her salary throughout her employment. Accordingly, Stopka filed her charge within 300 days of the alleged wrong.

B. FAILURE TO PROMOTE

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX 24

Not Reported in F.Supp.
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 7

*5 [8] Stopka's allegation that Alliance failed to promote her because of her age and gender implicates both the ADEA and Title VII. Stopka can prove her claim under these statutes in one of two ways. *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994) (citations omitted) (applying the Title VII standard to ADEA cases). Stopka can prove discriminatory intent directly through the use of direct or circumstantial evidence. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 n.2 (7th Cir. 1992); *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir. 1988) (citations omitted). Alternatively, Stopka may prove her case through the burden-shifting method used in Title VII cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Robinson*, 23 F.3d at 1162 (7th Cir. 1994).

Stopka attempts to prove her case under the burden shifting method. Under this approach, Stopka must establish a *prima facie* case of discrimination by showing that: (1) she belonged to a protected class (over forty for the ADEA and female for Title VII); (2) she applied for and was qualified for a specific position; [FN2] (3) she did not receive the position; and (4) the position remained open to others after she was rejected. *Locke v. Gas Research Institute*, 935 F. Supp. 994, 1001-02 (N.D. Ill. 1996) (citing *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 515 (7th Cir. 1996)). Once a *prima facie* case is established, the burden shifts to Alliance to articulate a non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-03; *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 869 (7th Cir. 1995). If Alliance articulates a non-discriminatory reason for its action, Stopka must then prove Alliance's stated reason is merely a pretext for discriminatory action. Stopka can satisfy this burden either "directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 797 (7th Cir. 1995) (quoting *Sarsha*, 3 F.3d at 1039). If Stopka meets that burden, she need not provide additional evidence of intentional discrimination to survive summary judgment. *Fuka*, 82 F.3d at 1404. Of course, the ultimate burden of persuasion remains at all times on Stopka. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

FN2. The Seventh Circuit has not employed a strict interpretation of the second element. *Loyd*, 25 F.3d at 523 (plaintiff need not necessarily apply for a position in order to make out a *prima facie* case).

Stopka has not satisfied the second element of the *prima facie* case. Namely, she has not shown she was qualified for the position. The position in question entailed the management of insurance research, lobbying, and information services. Stopka had little or no experience in any of these areas. Stopka claims that one does not need experience in these areas in order to manage employees who have that experience. Not only is this claim questionable, but Alliance has shown that it does not have "pure managers" and that managers are involved in the substantive work of the division they oversee. Def. 12(M) ¶ 277. Accordingly, Stopka was not qualified for the job and has not made out a *prima facie* case.

*6 [9][10] Moreover, even if Stopka made out a *prima facie* case, Alliance has provided non-pretextual reasons for promoting Heidrich instead of Stopka. Namely, Heidrich had different skills than Stopka, and the new job would have given Stopka substantial additional responsibilities, which was contrary to the instructions Alliance received from Stopka's doctor. Stopka argues that this explanation is pretextual. However, the only evidence she provides to support this argument is that she allegedly had better credentials than Heidrich. Self-serving statements about one's abilities cannot rebut a legitimate non-pretextual explanation given by an employer. *Dey v. Colt Constr. & Development Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). Accordingly, Stopka's promotion allegations under the ADEA and Title VII cannot survive summary judgment.

C. WAGE DISCRIMINATION

The Seventh Circuit has not delineated the elements of a *prima facie* case of wage discrimination under Title VII or the ADEA. *Gibson*, 846 F. Supp. at 1337 (citation omitted). However, it has held that a female plaintiff "cannot establish a *prima facie* case of salary discrimination without evidence that similarly-situated males were

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 8

paid more." *Weiss v. Coca-Cola Bottling Co. of Chicago,* 990 F.2d 333, 338 (7th Cir. 1993). The Seventh Circuit apparently requires this *prima facie* showing only when using the burden shifting method typical of Title VII and ADEA claims. *Shannon v. Saks & Co.,* No. 94-1793C, 1995 WL 270234, at *3 (N.D. Ill. May 5, 1995) (citing *Dortch v. Sleepeck Printing Co.,* 94-0517C, 1995 WL 110124 (N.D. Ill. Mar. 13, 1995)). This assumption is supported by the Seventh Circuit's decision in *Loyd,* where the court dropped the "similarly situated" language in discussing the direct method of proof. *Loyd,* 25 F.3d at 525 (holding that a plaintiff can make out a Title VII wage discrimination claim under the direct method of proof even when the jobs being compared are dissimilar).

[11] As the discussion of the Equal Pay Act indicates, Stopka has failed to show she and the other vice presidents were similarly situated. Accordingly, Stopka must use the direct method of proof using either direct or circumstantial evidence. *Loyd,* 25 F.3d at 525 n.6.

[12] With respect to the Title VII claim, Stopka argues she was the only female division head, was receiving the lowest salary of any division head, and was receiving a salary below that required by Alliance's salary schedule. Pl. 12(N)(3)(b) ¶ 244a; Stopka Aff. ¶ 6. Alliance argues that the salary schedule was not strictly followed and that salaries often bore no relation to the job level of a particular employee. Because Alliance did not follow the salary schedule, Alliance claims that Stopka cannot use the schedule to show that Alliance discriminated against her. However, an equally persuasive argument is that Alliance could more easily pay employees in a discriminatory manner precisely because it did not follow any set schedule for salaries.

*7 Alliance responds by pointing out that the company paid roughly the same number of men and women a salary below the minimum required by the salary grade. Def. 12(M) ¶ 88. At the same time, Stopka shows that more women than men were paid below the minimum required by the salary schedule at the higher levels of management. Pl. 12(N)(3)(a) ¶ 88. Stopka's assertions, taken together, create a genuine issue of material fact as to whether Alliance engaged in wage discrimination with respect to its female employees. Stopka was the only woman division head; she was paid less than every other division head; she was paid below the minimum required by Alliance's salary schedule; and more women than men in upper management were paid below the minimum required by the schedule. While Stopka's claim may not be particularly strong, she has provided more than a scintilla of evidence in support of her position. Accordingly, defendants' motion for summary judgment is denied as to the Title VII wage discrimination claim.

[13] Stopka's ADEA wage discrimination claim is not as successful. The only evidence she provides in support of her position is that Heidrich, a younger division head, was paid more than Stopka. Pl. 12(N)(3)(b) ¶ 244a. That assertion, by itself, is not sufficient to survive summary judgment because Heidrich and Stopka had different jobs and different backgrounds. Stopka has simply not provided the kind of evidence in the age context that she did in the gender context. Accordingly, Stopka's ADEA wage discrimination claim cannot survive summary judgment.

IV. ADA CLAIM

[14][15] Stopka argues that Alliance did not provide her with reasonable accommodations for her disabilities. The ADA requires an employer to provide reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability, unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(a). Stopka asserts that Alliance did not act reasonably to accommodate her when she returned from her disability leave in January 1995.

Stopka bases her argument on three sets of facts. First, she argues that Alliance could not reasonably have expected her to complete her work during an eight hour day, as her doctor required. Both parties agree that Alliance provided Stopka with some assistance in order to ensure that she worked no more than eight hours. However, Stopka complains that Alliance did not give her enough assistance and that Alliance must have known that the work she had could not have been accomplished in an eight hour day. Second, Stopka argues that Alliance

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX 26

Not Reported in F.Supp.  
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627  
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 9

should not have removed her responsibilities for the finance department. Stopka contends that Alliance should have discussed her responsibilities with her before removing them. Finally, Stopka contends Alliance should have consulted her before deciding that her disability prevented her from taking the new vice president position.

*8 Alliance claims Stopka did not make it clear to Alliance that she was working too many hours. Moreover, Alliance argues that it removed Stopka's finance responsibilities and refused her promotion (in part) because Alliance wanted to accommodate her disability. With respect to the number of hours Stopka worked, it is unclear the extent to which Alliance was aware of the number of hours Stopka was working. With respect to the promotion and the finance responsibilities, Alliance had some obligation to discuss Stopka's needs with her. The Seventh Circuit has held that an "employer has at least some responsibility in determining the necessary accommodation." *Feliberty v. Kemper Corp.*, 98 F.3d 274, 280 (7th Cir 1996) (citing *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). Moreover, "[t]he determination of a reasonable accommodation is a cooperative process in which both the employer and the employee must make reasonable efforts and exercise good faith." *Id.*

Stopka has provided enough evidence for a reasonable jury to find that given Stopka's work load and given her requests for assistance, Alliance should have known how many hours she was working. The record does indicate that Alliance responded to Stopka's requests for assistance and reduction of her work load. However, this evidence does not dispositively undermine Stopka's claim that Alliance's response was inadequate or not made in good faith. *Id.* Similarly, with respect to the promotion decision and the elimination of her finance responsibilities, a reasonable jury could find that Alliance should have engaged in a dialog with Stopka to determine her needs in these areas. *Id.* Accordingly, defendants' motion for summary judgment is denied as to Count III.

V. FMLA CLAIM

[16] Under the FMLA, an eligible employee receives twelve weeks of unpaid leave in any twelve month period for certain family and medical purposes without risking his or her job. 29 U.S.C. §§ 2612, 2614. An employer has no responsibility to restore a person's job after that twelve week period.

Although her argument on this point is vague, Stopka does not appear to deny (nor could she) that she used up her twelve weeks of leave. Rather, she makes the novel argument that if Alliance caused or contributed to her disability, Stopka would not have used her entire FMLA leave. Stopka does not support this argument with any case law. If Stopka's claim is that Alliance caused her disability, she could have sought redress under state tort law. Accordingly, Stopka's FMLA claim cannot survive summary judgment.

VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

[17] Illinois law governs Stopka's intentional infliction of emotional distress claim. Stopka must show that Alliance's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Gibson*, 846 F. Supp. at 1340 (citing *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (1976) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d)). A plaintiff cannot merely show "that the defendant acted with an intent which is tortious or even criminal, ... or even that [the] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* Moreover, the defendants must have intended that their conduct inflict severe emotional distress or know with a high degree of certainty that the conduct would cause severe distress. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993).

*9 Stopka's evidence cannot support a reasonable jury verdict in her favor under these standards. The conduct complained of could not reasonably be found to be so outrageous or so extreme as to be beyond all possible bounds of human decency. Accordingly, defendants' motion is granted as to Gibson's claim for intentional infliction of emotional distress.

CONCLUSION  
Defendants' motion for summary judgment is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX 27

Not Reported in F.Supp.
1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627
(Cite as: 1996 WL 717459 (N.D.Ill.))

Page 10

granted in part. Judgment is entered in favor of defendants Alliance of American Insurers, Rodger S. Lawson, Clarke Imbler, and Gregory W. Heidrich and against plaintiff Jo Ann Stopka as to Counts I, IV, V, and VI. The motion is denied as to Counts II and III against Alliance.

1996 WL 717459 (N.D.Ill.), 133 Lab.Cas. P 33,527, 3 Wage & Hour Cas.2d (BNA) 1298, 24 A.D.D. 627

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX 28