United States District Court
Southern District of Texas
FILED

FEB 10 2005

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **BEVERLY LASOURD,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. B-04-067** |
| | § | |
| **TARGET STORES,** | § | |
| **Defendant** | § | |

## DEFENDANT TARGET STORE'S MOTION FOR SUMMARY JUDGMENT

Dated: February 10, 2005

OF COUNSEL:
BRACEWELL & PATTERSON, L.L.P.

Respectfully submitted,

Robert S. Nichols
State Bar No. 15006400
Federal I.D. No. 17118
711 Louisiana, Suite 2900
Houston, Texas  77002-2781
Telephone: (713) 221-1259
Telecopier: (713) 222.3269

**ATTORNEY FOR DEFENDANT
TARGET STORES**

# TABLE OF CONTENTS

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .................... 1

II.   STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT ........................ 1

III.  STATEMENT OF FACTS ......................................................................................... 2

IV.   SUMMARY OF THE ARGUMENT .......................................................................... 6

V.    LAW AND ARGUMENT ........................................................................................... 7

    A.   Applicable Summary Judgment Standard ........................................................ 7

    B.   Plaintiff's Claim That She Was Discharged Because of Her Age Fails Because of the Absence of Evidence of Pretext ......................................................................... 8

    C.   Plaintiff's Discrimination Claim with Regard to the Size of Pay Increases Is Barred by the Statute of Limitations ................................................................................ 11

    D.   Plaintiff's Discrimination Claim with Respect to Pay also Fails Because of the Absence of Evidence of Pretext ..................................................................................... 12

    E.   Plaintiff's Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law .. 14

VI.   CONCLUSION ......................................................................................................... 15

APPENDIX (with separate Table of Contents) .......................................................... 17

# TABLE OF CITATIONS

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................ 7

*Armendariz v. Pinkerton Tobacco Co.*,
    58 F.3d 144 (5th Cir. 1995) ............................................................................. 7

*Atkinson v. Denton Pub. Co.*,
    84 F.3d 144 (5th Cir. 1996) ........................................................................... 17

*Auguster v. Vermilion Parish School Bd.*,
    249 F.3d 400 (5th Cir. 2001) ......................................................................... 12

*Bauer v. Albemarle Corp.*,
    169 F.3d 962 (5th Cir. 1999) ......................................................................... 12

*Bodenheimer v. PPG Indus., Inc.*,
    5 F.3d 955 (5th Cir. 1993) ............................................................................... 7

*Buckley v. Donohue Industries, Inc.*,
    100 Fed. Appx. 275 (5th Cir. 2004)............................................................... 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................... 7

*City of Midland v. O'Bryant*,
    18 S.W.3d 209 (Tex. 2000)............................................................................ 16

*Davis v. Dallas Area Rapid Transit*,
    383 F.3d 309 (5th Cir. 2004) ......................................................................... 10

*Greene v. Coach, Inc.*,
    218 F. Supp. 2d 404 (S.D.N.Y. 2002)........................................................... 11

*GTE Southwest, Inc. v. Bruce*,
    998 S.W.2d 605 (Tex. 1999)........................................................................... 16

*Gunther v. Gap, Inc.*,
    1 F. Supp. 2d 73 (D. Mass. 1998) ................................................................. 11

*Hughes Training Inc. v. Cook*,
   254 F.3d 588 (5th Cir. 2001) ................................................................. 17

*McDonnell Douglas Corp v. Green*,
   411 U.S. 792 (1973) ............................................................................... 9

*Morgan v. Anthony*,
   27 S.W.3d 928 (Tex. 2000) ................................................................... 15

*Palucki v. Sears, Roebuck & Co.*,
   879 F.2d 1568 (7th Cir. 1989) ................................................................ 8

*Patrick v. Ridge*,
   394 F.3d 311 (5th Cir. 2004) ................................................................ 10

*Quantum Chem. Corp. v. Toennies*,
   47 S.W.3d 473 (Tex. 2001) ..................................................................... 9

*Ramirez v. Allright Parking El Paso, Inc.*,
   970 F.2d 1372 (5th Cir. 1992) .............................................................. 17

*Read v. B.T. Alex Brown, Inc.*,
   72 Fed. Appx. 112 (5th Cir. 2003) ........................................................ 12

*Sandstad v. CB Richard Ellis, Inc.*,
   309 F.3d 893 (5th Cir. 2002) ................................................................ 10

*Specialty Retailers, Inc. v. DeMoranville*,
   933 S.W.2d 490 (Tex. 1996) ................................................................. 13

*Stopka v. Alliance of American Insurers*,
   3 Wage & Hour Cas.2d (BNA) 1298 (N.D. Ill. 1996) ............................. 15

*Tex. Farm Bureau Mut. Ins. Co. v. Sears*,
   84 S.W.3d 604 (Tex. 2002) ................................................................... 16

*Texas Dept. of Community Affairs v. Burdine*,
   450 U.S. 248 (1981) ............................................................................... 9

*Twyman v. Twyman*,
   855 S.W.2d 619 (Tex. 1993) ................................................................. 16

*Ulrich v. Exxon Co., U.S.A.*,
   824 F. Supp. 677 (S.D. Tex. 1993) ........................................................................ 8

*Waggoner v. City of Garland, Tex.*,
   987 F.2d 1160 (5th Cir. 1993) ............................................................................. 8

*Walker v. Thompson*,
   214 F.3d 615 (5th Cir. 2000) ........................................................................... 17

*Wallace v. Methodist Hosp. Sys.*,
   271 F.3d 212 (5th Cir. 2001) ........................................................................... 12

*Wal-Mart Stores, Inc. v. Canchola*,
   121 S.W.3d 735 (Tex. 2003)........................................................................ 9, 10

*Washington v. Armstrong World Indus., Inc.*,
   839 F.2d 1121 (5th Cir. 1988) ............................................................................ 8

*Weeks v. Coury*,
   951 F. Supp. 1264 (S. D. Tex. 1996) ................................................................ 17

*Wyvill v. United Companies Life Ins. Co.*,
   212 F.3d 296 (5th Cir. 2000) ........................................................................... 10

## Statutes

29 U.S.C. §§ 621-635 .................................................................................... 9, 15

Fed. R. Civ. P. 56(c) ........................................................................................ 7

Texas Labor Code § 21.202(a) (Vernon 1996 & Supp. 2004) ................................ 13

Texas Labor Code §§ 21.001-21.556 (Vernon 1996 & Supp. 2004) ......................... 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BEVERLY LASOURD, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-04-067 |
| | § | |
| TARGET STORES, | § | |
| Defendant | § | |

### DEFENDANT TARGET STORE'S MOTION FOR SUMMARY JUDGMENT

Defendant Target Stores files this Motion for Summary Judgment and respectfully shows the following:

### I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an employment discrimination case.    Specifically, Plaintiff alleges age discrimination and a common law claim of intentional infliction of emotional distress.    Initially, there were two defendants.    However, the parties by written stipulation previously filed with the Court have dismissed Defendant Tracy Castillo.    Discovery has been completed.    The deadline for filing dispositive motions is February 10, 2005.    Therefore, this Motion is filed in a timely manner.    Trial is set for June 6, 2005.

### II.    STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT

This is an employment discrimination lawsuit brought under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE §§ 21.001-21.556 (Vernon 1996 & Supp. 2004-2005).    Specifically, the Plaintiff, Beverly Lasourd ("Plaintiff" or "Lasourd") claims that Defendant ("Target") discriminated against her with respect to (i) her discharge from employment and (ii) the size of pay increases she received.[1]    Plaintiff also asserts the common

---

[1] While Plaintiff's Original Petition only expressly asserts that Plaintiff was terminated "on account of age," one sentence in the "Factual Allegations" section of the Petition seems to imply

law tort claim of intentional infliction of emotional distress. Each of Plaintiff's theories of recovery fails as a matter of law.

Plaintiff's discriminatory discharge claim under the TCHRA is subject to summary judgment because Defendant has articulated a legitimate nondiscriminatory reason for her discharge and Plaintiff has offered no evidence that Defendant's justification for discharge is a pretext for age discrimination. As for Plaintiff's claim that she was discriminated against with respect to the size of her pay increases, that theory is plainly barred by the applicable statute of limitations. Additionally, Defendant has articulated a legitimate nondiscriminatory explanation for the size of Plaintiff's pay increases, and Plaintiff has offered no evidence that that explanation is a pretext for age discrimination.

Finally, with regard to Plaintiff's claim of intentional infliction for emotional distress, that claim fails because it is well established that the conduct at issue in this case (*i.e.*, a discharge from employment and the size of pay increases), as a matter of law, cannot constitute the kind of "outrageous" conduct necessary to sustain an intentional infliction claim.

These issues are matters to be ruled on by the Court.

### III.   STATEMENT OF FACTS[2]

Plaintiff was employed with Target as a Cashier at the company's Harlingen, Texas store. *Pl. Dep. 25:15-22* (Appendix, Tab 6, p. 32). Target employs Asset Protection specialists at each

---

Plaintiff believes her discharge was retaliatory. Specifically, in the third paragraph of the "Factual Allegations" section, Plaintiff states that "[w]hen Plaintiff protested the younger employees did the same thing, she was told she was being fired." However, when questioned in her deposition about what claims she was making, Plaintiff plainly established that she did not believe that Target management had a retaliatory motive in discharging her. *Pl. Dep. 68:9-18; 138:7-22; 140:7-141:7; 158:4-9.* (Appendix, Tab 6, p.49-52)

[2] For purposes of this motion only, Defendant accepts Plaintiff's factual assertions as true.

of its stores to provide loss prevention services. *Castillo Dec. ¶ 2*[3] (Appendix, Tab 1, p. 1). In late March and early April of 2003, the Asset Protection staff at Target's store discovered six instances occurring over the course of approximately 18 days in which Plaintiff, without authorization, marked down the price of merchandise for customers to an amount well below the stated price for the item. *Castillo Dec. ¶ 3* (Appendix, Tab 1, p. 1). As a matter of course, cashiers are expected to sell merchandise items to customers for the stated price and generally do not have the authority to mark down the price of items for customers. *Castillo Dec. ¶ 4* (Appendix, Tab 1, p. 1). The only exception to this rule is when a customer challenges a price or has an unticketed item; the employee then has permission to take the customer's word for the price if both (i) the price is not more than $20 below the retail price on the item and (ii) the price asserted by the customer is "reasonable." *Castillo Dec. ¶ 4* (Appendix, Tab 1, p. 1). If cashiers are uncertain as to whether these criteria are satisfied, they are instructed and trained to contact a supervisor and seek guidance. *Castillo Dec. ¶ 4* (Appendix, Tab 1, p. 1). During Target's investigation in late March and early April of 2003, Tracy Castillo, the store's Asset Protection Team Leader, found markdowns by Plaintiff that were plainly unreasonable given the scanned price of the item. *Castillo Dec. ¶ 5* (Appendix, Tab 1, p. 1). For example, on one occasion, Plaintiff marked down a $18.86 book for a customer to only $2.50. *Castillo Dec. ¶ 5* (Appendix, Tab 1, p. 1). On another occasion, Plaintiff marked down a watch for a customer that had a

---

[3] In referring to various supporting materials, Target uses certain abbreviations. Specifically, "Castillo Dec." refers to the declaration of Tracy Castillo, the Asset Protection Team Leader for Target's Harlingen store during the time period at issue. Ms. Castillo's declaration is attached hereto at Appendix, Tab 1. References to "Gutierrez Dec." in this Motion refers to the declaration of Ramona Gutierrez, the Store Team Leader for Target's Harlingen store during the time period at issue. Ms. Gutierrez's declaration is attached hereto at Appendix, Tab 2. References to "Pl. Dep." refer to the transcript of the oral deposition of Plaintiff. Pages and an exhibit from that deposition cited in this Motion are attached hereto at Appendix, Tab 6. Tabs 3,

scanned price of $9.08 and sold it to the customer for only $1.00. *Castillo Dec. ¶ 5* (Appendix, Tab 1, p. 1).

Miss Castillo was concerned about these extraordinary markdowns by Plaintiff not only because the markdowns were plainly unreasonable given the scanned price of the items, but also because Plaintiff often used inappropriate, and seemingly deceptive, methods of marking down the merchandise. *Castillo Dec. ¶ 6* (Appendix, Tab 1, p. 1-2). For example, if a merchandise item is presented for purchase without a bar code or price ticket, the cashier is to key in "999999" in the price. *Castillo Dec. ¶ 6* (Appendix, Tab 1, p. 1-2). Instead of following this standard process, Plaintiff often rang up items using a code for Christmas decorations (code 511) when the items involved were clearly not Christmas decorations. *Castillo Dec. ¶ 6* (Appendix, Tab 1, p. 1-2). Because these sales were coded by Plaintiff as Christmas decorations, very substantial price reductions would be less likely to draw the attention of members of management reviewing reports. *Castillo Dec. ¶ 6* (Appendix, Tab 1, p. 1-2). This was the case because during that time of year (March and April), Christmas decorations were often sold at very large discounts. *Castillo Dec. ¶ 6* (Appendix, Tab 1, p. 1-2). Plaintiff's practice of using this alternate code not only meant that Plaintiff was ringing up the merchandise inappropriately, but also that she was causing significant errors in inventory and sales tracking at the store. *Castillo Dec. ¶ 7* (Appendix, Tab 1, p. 2). The investigation by Miss Castillo, in fact, revealed that Plaintiff used this wrong alternative code on 27 different occasions in a one-month period. *Castillo Dec. ¶ 7* (Appendix, Tab 1, p. 2). Target's written policy at the time plainly put employees on notice that they could "lose [their] job" if they engaged in unauthorized markdowns or incorrectly rang up sales. *Castillo Dec. ¶ 8* (Appendix, Tab 1, p. 2).

---

4, and 5 are copies of unpublished cases cited in this Motion. References to "Pl. Orig. Pet." refer

Plaintiff admitted in her deposition in this case that she was aware that even when a customer disputed a price, she was not authorized to make "unreasonable" markdowns. *Pl. Dep. 100:24-101:15* (Appendix, Tab 6, p. 41-42). Further, Plaintiff admitted that Target trained her about this reasonableness requirement. *Pl. Dep. 109:15-110:1* (Appendix, Tab 6, p. 44-45). Additionally, Plaintiff acknowledged that very large markdowns by a cashier, such as selling a book at 80% below the scanned price, would be "unreasonable." Moreover, Plaintiff admitted that in giving customers substantial price breaks, there were occasions when she would put in a code indicating that they were "Christmas decorations." *Pl. Dep. 104:2-6* (Appendix, Tab 6, p. 43).

After several weeks of investigating Plaintiff's markdown practices, Ms. Castillo, Asset Protection Team Leader for the store, together with another Asset Protection specialist and a member of the store's management, met with Plaintiff on April 3, 2003, to interview her concerning these discounts. *Castillo Dec. ¶ 9* (Appendix, Tab 1, p. 2). Plaintiff reports that at that meeting, Miss Castillo ultimately notified her that her employment was terminated. *Pl. Dep. 82:18-83:17[4]* (Appendix, Tab 6, p. 39-40).

On April 23, 2003, Plaintiff filed an administrative complaint with the Texas Commission on Human Rights alleging age discrimination with respect to (i) her discharge and (ii) the size of pay increases she received. *Pl. Dep. 115-117:1 and Ex. 10* (Appendix, Tab 6, pp. 46-48, 54).

---

to the Plaintiff's Original Petition on file in this case.

[4] Miss Castillo disputes this assertion by Plaintiff that Plaintiff was terminated at that meeting. Miss Castillo indicates that Plaintiff was told to return for another meeting with store management later that same week. *Castillo Dec. ¶ 9* (Appendix, Tab 1, p. 2). However, Miss Castillo does not dispute that Plaintiff's conduct would have ultimately led to her discharge. *Castillo Dec. ¶ 8* (Appendix, Tab 1, p. 2). For purposes of this Motion only, Defendant does not

Notably, while this case is about alleged age discrimination, Plaintiff believes she received less favorable treatment at Target for reasons in addition to her age. For example, while not alleged in her administrative charge or her complaint in this lawsuit, Plaintiff also feels she was treated less favorably because she is a White person. *Pl. Dep. 140:24 – 141:2* (Appendix, Tab 6, p. 50-51).

Finally, Plaintiff feels another reason she was treated less favorably was that she did not "kiss up" to management. *Pl. Dep. 71:7-25* (Appendix, Tab 6, p. 38). In other words, she was not "especially nice to management." *Pl. Dep. 71:7-25* (Appendix, Tab 6, p. 38). She explained in her deposition that one employee whom she claims received better treatment than she did, did so because he, as Plaintiff put it, "kissed a lot of butt " around the store. *Pl. Dep. 71:7-25* (Appendix, Tab 6, p. 38).

Again, while Plaintiff contended in her deposition that store management had a variety of reasons for treating her less favorably, in this case she only complains about alleged age discrimination. *See Pl. Orig. Pet § V.*

## IV.    SUMMARY OF THE ARGUMENT

This section summarizes the applicable law with regard to summary judgment and addresses the claims of Plaintiff in the following points:

        a.     The applicable summary judgment standard,

        b.     Plaintiff's claim that she was discharged because of her age, which fails because of the absence of evidence of pretext,

        c.     Plaintiff's discrimination claim with regard to the size of her pay increases, which are barred by the statute of limitations;

---

dispute Plaintiff's assertion that she was told that she was being terminated at the April 3 meeting with Miss Castillo.

       d.     Plaintiff's discrimination claim with respect to pay, which also fails because of the absence of evidence of pretext, and

       e.     Plaintiff's intentional infliction of emotional distress claim, which fails as a matter of law.

## V.    LAW AND ARGUMENT

### A.    Applicable Summary Judgment Standard

Federal rules provide for summary judgment where no genuine issue as to any material fact exists. FED. R. CIV. P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993). "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (plaintiff must come forward with "specific facts showing there is a genuine issue for trial" to overcome defendant's summary judgment motion); *Bodenheimer*, 5 F.3d at 958 (plaintiff required to produce "factual evidence" to defeat defendant's summary judgment motion). Speculation, conjecture, and surmise do not constitute the requisite affirmative evidence and cannot serve to defeat a motion for summary judgment. *See, e.g., Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144 (5th Cir. 1995) (subjective belief of plaintiff and co-worker that plaintiff's termination was result of age discrimination insufficient to create jury issue as to whether defendant's reason was pretext for age discrimination); *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) (plaintiff's belief that supervisors conspired to fabricate reasons to fire him "is mere speculation, insufficient to create a genuine issue of material fact"); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)

(summary judgment cannot be avoided on basis of affidavits and/or deposition testimony based on conjecture).

Furthermore, Target's motion for summary judgment may not be denied on the off chance that at trial Plaintiff might be able to produce facts to support her claims of discrimination or retaliation, or that she might able to convince a jury that Target's witnesses are not credible. *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988) (claim that further discovery or trial might reveal facts of which plaintiff is currently unaware is insufficient to defeat defendant's motion for summary judgment); *Ulrich v. Exxon Co., U.S.A.*, 824 F. Supp. 677, 685 (S.D. Tex. 1993) (plaintiff in race discrimination suit cannot avoid summary judgment on remote possibility that at trial he may be able to convince jury that defendant's witnesses are unbelievable; neither desire to cross-examine affiant nor unspecified hope of undermining his/her credibility suffices to avert summary judgment).

**B.**   **Plaintiff's Claim That She Was Discharged Because of Her Age Fails Because of the Absence of Evidence of Pretext**

Plaintiff's age discrimination claims are brought under a Texas anti-discrimination statute, the TCHRA. *Pl. Orig. Pet. § V.* The Texas Supreme Court has directed that, in analyzing a discrimination claim under the TCHRA, it is appropriate to consider not only state cases but also federal case authority under federal anti-discrimination laws, including the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-635 ("ADEA"). *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA."). Accordingly, in this Motion, Defendant cites not only Texas state cases but also applicable federal decisions involving anti-discrimination claims.

As for the analytical framework utilized to assess an age discrimination claim, the Fifth Circuit Court of Appeals provides that "[i]n the absence of direct proof of discrimination, the plaintiff in an age discrimination case must follow the three-step burden-shifting framework laid out in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000). In discrimination cases, both the federal courts and Texas state courts apply this three-part *McDonnell-Douglas* burden-shifting analysis. *See Wal-Mart Stores*, 121 S.W.3d at 739.

Under that analysis, a plaintiff must first satisfy the requirements of a "prima facie" case. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). To establish the prima facie case, the plaintiff must prove: (1) the plaintiff was discharged; (2) she was qualified for the position at issue; (3) she was within the protected class; and (4) she was replaced by someone younger or outside the protected group. *Id.* "Upon plaintiff's satisfaction of a prima facie case, the burden of production, rather than persuasion, shifts to the defendant to proffer a legitimate nondiscriminatory reason for its decision." *Id.* Importantly, the defendant need not prove its decision was motivated by that proffered reason, but rather only is required to "articulate" some legitimate reason. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "If the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination." *Sandstad*, 309 F.3d at 897. In other words, "the plaintiff must present evidence that the employer's proffered reason was mere pretext" for discrimination. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

Assuming for purposes of this Motion that Plaintiff can establish a *prima facie* case, there is no question but that Defendant has articulated a legitimate, nondiscriminatory reason. Specifically, Plaintiff was terminated for making markdowns on items and ringing up sales in a manner that was in violation of company policy. *Gutierrez Dec. ¶ 6* (Appendix, Tab 2, p. 3-4). Violation of an employer's known policy is a legitimate, nondiscriminatory reason for an employer's adverse employment decision. *See, e.g., Gunther v. Gap, Inc.,* 1 F. Supp. 2d 73, 78 (D. Mass. 1998) (employee's failure to follow company policy, of which she had knowledge, requiring that managers ensure the store is supervised at all times and is appropriately staffed, was legitimate nondiscriminatory reason for her discharge); *Greene v. Coach, Inc.,* 218 F. Supp. 2d 404, 409 (S.D.N.Y. 2002) (allowing an unauthorized person into the stockroom and disposing of company property in violation of employer's loss prevention policy satisfies defendant's burden of producing a legitimate, nondiscriminatory reason for employee's discharge). Notably, two other employees, ages 21 and 26, at Target's Harlingen store have been terminated for similar misconduct. *Gutierrez Dec. ¶ 7* (Appendix, Tab 2, p. 4).

Because Defendant has articulated a legitimate nondiscriminatory reason for the discharge, summary judgment is appropriate unless the Plaintiff can present probative evidence that the proffered reason is a mere pretext for discrimination. In fact, in a summary judgment context, the Fifth Circuit Court of Appeals has directed that for a plaintiff to survive a motion for summary judgment, she "must produce **substantial evidence** that the defendant's nondiscriminatory reason is merely a pretext for impermissible discrimination." *Read v. B.T. Alex Brown, Inc.,* 72 Fed. Appx. 112, No. 02-10191, 2003 WL 21754966, at *2 (5th Cir. 2003) (emphasis added), *cert. denied,* 540 U.S. 1180 (Feb. 23, 2004); *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 (5th Cir. 2001). "Where the plaintiff fails to produce substantial evidence of

pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate." *Read*, 2003 WL 21754966 at *2.

Significantly, when questioned during her deposition about the factual basis for her belief that she was terminated because of her age, Plaintiff readily acknowledged that she did not "have any facts" to support that belief. *Pl. Dep. 50:22-51:8* (Appendix, Tab 6, p. 33-34). The Fifth Circuit has long emphasized in assessing summary judgments in discrimination cases that a plaintiff's "subjective belief of discrimination cannot, without more, create a jury issue in the face of a legitimate, nondiscriminatory reason." *Buckley v. Donohue Industries, Inc.*, 100 Fed. Appx. 275, No. 03-41215, 2004 WL 1240535, at *3 n.1 (5th Cir. 2004); *see also Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) ("This court has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief.'") (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)). Accordingly, summary judgment is appropriate with respect to Plaintiff's claim of discriminatory discharge.

## C.   Plaintiff's Discrimination Claim with Regard to the Size of Pay Increases Is Barred by the Statute of Limitations

During her deposition, Plaintiff confirmed that other than her discharge, the only action by Target that she is complaining about in this suit is her assertion that she received smaller pay increases because of her age. *Pl. Dep. 138:7-22 and 140:7-23* (Appendix, Tab 6, p. 49-50).

At Target, store employees are considered for a pay increase on an annual basis in conjunction with their annual performance evaluation. *Gutierrez Dec. ¶ 4* (Appendix, Tab 2, p. 3). Plaintiff's performance evaluation and, accordingly, her opportunity for a pay increase, occurred in April of each year. *Gutierrez Dec. ¶ 4* (Appendix, Tab 2, p. 3). According to Plaintiff, she was terminated on April 3, 2003. *Pl. Dep. 116:5-14 and Ex. 10* (Appendix, Tab 6,

pp. 47, 54)  The last time Plaintiff had been scheduled to receive a pay increase had been April 7, 2002.  *Gutierrez Dec. ¶ 4* (Appendix, Tab 2, p. 3).  Under the TCHRA, the statute under which Plaintiff brings her discrimination claims, a plaintiff must file, with the appropriate agency, an administrative complaint raising the alleged discriminatory employment action within 180 days of that employment action by the employer.  TEX. LAB. CODE § 21.202(a) (Vernon 1996 & Supp. 2004-2005); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996).  This 180-day limitations period is "mandatory and jurisdictional."  *Specialty Retailers*, 933 S.W.2d at 493.  In this case, Plaintiff filed her administrative complaint concerning the size of her pay increase on April 22, 2003.  *Pl. Dep. 115-117:1 and Ex. 10* (Appendix, Tab 6, pp. 46-48, 54).  In other words, that filing came 380 days after the last pay increase opportunity.  Accordingly, Plaintiff's age discrimination claim concerning her prior pay raises is barred by the applicable 180-day limitations period.

**D.**   **Plaintiff's Discrimination Claim with Respect to Pay also Fails Because of the Absence of Evidence of Pretext**

While Plaintiff's claim concerning pay increases is plainly barred by the 180-day limitations, even if that were not the case, Plaintiff's claim would still fail as a matter of law. Assuming Plaintiff could establish a prima facie case of age discrimination with regard to pay increases, Defendant articulated a legitimate nondiscriminatory explanation for the size of Plaintiff's pay increases, and Plaintiff can point to no probative evidence of pretext.  Specifically, as Store Team Leader Ramona Gutierrez explains in her attached declaration, Plaintiff "received pay increases each and every year she was employed by Target."  *Gutierrez Dec. ¶ 5* (Appendix, Tab 2, p. 3).  The size of those pay increases, as Ms. Gutierrez explains, were the function of her performance evaluations and certain well-established criteria at Target for determining pay

increases. *Gutierrez Dec. ¶ 5* (Appendix, Tab 2, p. 3). In sum, Ms. Gutierrez articulates a legitimate, nondiscriminatory explanation for how Plaintiff's pay increases were determined.

Because Defendant has articulated a legitimate explanation, Plaintiff must offer "substantial evidence" of pretext to survive a motion for summary judgment. When asked during her deposition what facts she had to support her claim that she did not receive larger pay increases because of her age, Plaintiff could only point to the fact that she knew (i) that some younger employees received bigger pay increases and (ii) that some younger employees were scheduled for more hours of work than some older employees. *Pl. Dep. 61:17-62:4* (Appendix, Tab 6, p. 35-36). Obviously, these assertions by Plaintiff, standing alone, do not constitute probative evidence of age discrimination. During Plaintiff's employment, Target employed approximately 130 employees at any given time at its Harlingen store. *Gutierrez Dec. ¶ 3* (Appendix, Tab 2, p. 3). The mere fact that there may have been some younger employees who at particular times received a larger pay increase than Plaintiff, or some younger employees, among those 130 workers, who were scheduled for more hours, obviously, is not probative evidence of age discrimination. *See Stopka v. Alliance of American Insurers*, 3 Wage & Hour Cas.2d (BNA) 1298, 1303 (N.D. Ill. 1996) (plaintiff's ADEA wage discrimination claim cannot survive summary judgment where the only evidence she presented was that a younger division head was paid more), *aff'd*, 141 F.3d 681 (7th Cir. 1998). Further, Plaintiff acknowledged during her deposition that this was the only factual support she could cite for her claim of age discrimination with respect to the size of her pay increases. *Pl. Dep. 61:17-62:4* (Appendix, Tab 6, p. 35-36). In sum, even if Plaintiff's discrimination claim with regard to pay increases was not barred by the applicable limitations, it would fail because of the absence of evidence of intentional age discrimination with regard to pay increases.

E.    **Plaintiff's Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law**

In order to recover damages for intentional infliction of emotional distress, a plaintiff must establish that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex. 2000). To be extreme and outrageous, a defendant's conduct must be "So outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Conduct that is merely insensitive or rude is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex. 1999). Only when reasonable minds may differ is it for the jury to determine whether conduct has been sufficiently extreme and outrageous to result in liability. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 610 (Tex. 2002). A claim for intentional infliction of emotional distress does not lie for "ordinary employment disputes." *Id.* at 611 (quoting *GTE Southwest,* 998 S.W.2d at 612-13). Only "in the most unusual of circumstances" is conduct so extreme and outrageous that it is removed from the realm of ordinary employment disputes. *GTE Southwest,* 998 S.W.2d at 613.

Plaintiff confirmed in her deposition that the only conduct by Target that she is complaining about in this case is (i) her discharge and (ii) the size of her pay raises. *Pl. Dep. 138:7-22 and 140:7-23* (Appendix, Tab 6, p. 49-50). The wrongful "termination of an employee does not, standing alone, constitute intentional infliction of emotional distress." *City of Midland v. O'Bryant,* 18 S.W.3d 209, 217 (Tex. 2000). Additionally, wrongful denial of a pay increase

will not support an intentional infliction claim. *Weeks v. Coury*, 951 F. Supp. 1264, 1279 n.77 (S. D. Tex. 1996). Moreover, the fact an employment action may have even been discriminatory or illegal does mean it is actionable under intentional infliction theory. *Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1376 (5th Cir. 1992).

Whether conduct is adequately outrageous to support an intentional infliction claim is a question of law. In other words, "it is the province of the Court to determine whether a defendant's conduct may reasonably be regarded as extreme and outrageous enough to permit recovery." *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 151 (5th Cir. 1996). In this case, Plaintiff's allegations concerning her discharge and pay increases, even if true, constitute nothing more than "ordinary employment dispute[s]." *See Hughes Training Inc. v. Cook*, 254 F.3d 588, 594-95 (5th Cir. 2001); *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000). Accordingly, Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

## VI.   CONCLUSION

For the reasons stated above, all of Plaintiff's claims fail as a matter of law and Target is entitled to summary judgment on Plaintiff's entire case.

Dated: February 10, 2005                     Respectfully submitted,

OF COUNSEL:
BRACEWELL & PATTERSON, L.L.P.

                                             Robert S. Nichols
                                             State Bar No. 15006400
                                             Federal I.D. No. 17118
                                             711 Louisiana, Suite 2900
                                             Houston, Texas  77002-2781
                                             Telephone: (713) 221-1259
                                             Telecopier: (713) 222.3269

                                             **ATTORNEY FOR DEFENDANT
                                             TARGET STORES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Defendant's Motion for Summary Judgment* has been sent by certified mail, return receipt requested, on this the 10th day of February, 2005, to the following:

Mr. Miguel Salinas
LAW OFFICE OF MIGUEL SALINAS
803 Old Port Isabel Rd.
Brownsville, Texas 78521
**CMRRR #7004 1160 0005 6014 6395**

Robert S. Nichols